THE STATE OF OHIO, APPELLEE, *v.* WILSON, A.K.A. BAKER, APPELLANT.

(No. 53645 — Decided
April 18, 1988.)

*John T. Corrigan*, prosecuting attorney, and *George J. Sadd*, for appellee.

*Randall M. Dana*, public defender, and *Joseph N. Rosenthal*, for appellant.

PARRINO, J. Defendant-appellant Daryl S. Wilson, a.k.a. Darnell Baker, was indicted on November 23, 1984 for robbery, R.C. 2911.02. On August 15, 1985 defendant was indicted for the identical robbery offense; however, the indictment further set forth an aggravating felony specification.[1]

On November 15, 1985, defendant was found guilty by a jury of the offense set forth in the indictment. Defendant was sentenced on November 20, 1985 to a term of eight years' actual time and not more than fifteen years.

On May 6, 1987, defendant was granted leave to file a delayed appeal. App. R. 5(A).

On appeal, defendant contends the indictment was the result of prosecutorial vindictiveness and such action deprived him of due process. Defendant also claims the charge contained plain error. These assignments of error are without merit. The trial court's judgment is affirmed.

Defendant's initial assignment of error follows:

"The trial court erred in denying appellant's motion to quash a second indictment against him for robbery which added a prior aggravated felony specification where said specification was sought because appellant invoked his constitutional right to plead not guilty and be tried by a jury."

This assignment of error is without merit.

Defendant maintains the prosecutor's action in dismissing the original indictment and procuring the subsequent indictment which included the aggravated felony specification demonstrated a vindictive motive in violation of his right to due process. In this regard, defendant contends the prosecutor's action was in retaliation for defendant's decision to exercise his right to be tried by a jury.

In further support of this claim of prosecutorial vindictiveness, defendant claims the "specification could have been sought at the time of the original indictment." Defendant contends the fact it was not evidences a retaliatory motive on the part of the state.

The United States Supreme Court has repeatedly recognized the uncontroverted principle that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States* v. *Goodwin* (1982), 457 U.S. 368, 372. See, also, *Bordenkircher* v. *Hayes* (1978), 434 U.S. 357; *Blackledge* v. *Perry* (1974), 417 U.S. 21; *North Carolina* v. *Pearce* (1969), 395 U.S. 711.

In *Pearce*, the trial judge imposed a harsher sentence on retrial after the

---

[1] On November 12, 1985 the state dismissed the original indictment of November 23, 1984.

defendant had obtained a reversal of his conviction on appeal. The court held this practice offended the Due Process Clause of the Fourteenth Amendment. In this regard, the court stated as follows:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Pearce, supra,* at 725.

In *Perry,* the defendant also successfully attacked his original misdemeanor conviction. Upon retrial, Perry was reindicted for a felony charge. Perry pleaded guilty and received a harsher sentence. The court held the prosecutor's action also violated due process. In this regard, the court stated as follows:

"A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial." *Perry, supra,* at 27-28.

In *Pearce* and *Perry,* the court "presumed" a vindictive motive on the part of the state which could be overcome only by "factual data" in the record "so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Pearce, supra,* at 726.

It is this same presumption of vindictiveness upon which defendant relies on appeal and which is essential to a successful attack of his conviction.

*Goodwin,* however, described the infrequent circumstances justifying invocation of the presumption:

"* * * Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists." *Goodwin, supra,* at 373.

The *Hayes* decision, *supra,* reflected the court's reluctance to extend the invocation of the presumption to situations other than a defendant lawfully attacking his conviction. *Hayes* involved an allegation of vindictiveness in a pretrial setting. In *Hayes,* the defendant was indicted for an offense punishable by an incarceration period of two to ten years. During pretrial negotiations the prosecutor informed Hayes he would reindict Hayes for an offense carrying a mandatory sentence of life imprisonment if he failed to plead guilty to the original indictment. It was uncontroverted in *Hayes* that the prosecutor's action was due to Hayes' refusal to plead and, in addition, the additional charge carrying the harsher sentence was justified. The *Hayes* court refused to invoke the

"presumption of vindictiveness" present in *Pearce* and *Perry* based on the rationale the due process violation in *Pearce* and *Perry* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right * * * but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Hayes, supra,* at 363. The *Hayes* court concluded the prosecutor's action was within the constitutional limits of his discretion. In this regard, the court stated as follows:

"We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." *Hayes, supra,* at 365.

In *Goodwin,* the court again was faced with a claim of prosecutorial vindictiveness in a pretrial setting. In *Goodwin,* the defendant was originally indicted for misdemeanor offenses. Goodwin later revealed he desired to exercise his right to be tried by jury. Defendant was subsequently reindicted in a four-count indictment with a single felony count. The four-count indictment arose out of the same incident which gave rise to the original indictment. Unlike *Hayes,* the evidence in *Goodwin* failed to give rise to a claim of actual vindictiveness; therefore, Goodwin could succeed upon his claim of prosecutorial vindictiveness only if he could invoke the presumption present in *Pearce* and *Perry.*

In *Goodwin,* the court once again refrained from "adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting." *Goodwin, supra,* at 381. In concluding the presumption was unwarranted, the court discussed, at length, the reasons

why a "prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. *An initial decision should not freeze future conduct."* (Emphasis added.) *Goodwin, supra,* at 382. In this regard, the court stated as follows:

"* * * In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this state of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

"In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates." *Goodwin, supra,* at 381.

This myriad of possible motives

present in the pretrial setting set forth in *Goodwin* makes it unrealistic to apply the presumption of vindictiveness present in cases where the defendant has successfully attacked his original conviction. In this latter *Pearce-* and *Perry-*type of situation, there exists a "realistic likelihood of vindictiveness" due to the reduced number of motives; therefore, the presumption is warranted.

The court's refusal to presume vindictiveness in *Goodwin* is controlling in the case *sub judice*. As in *Goodwin*, the only evidence defendant "is able to marshal in support of his allegation of vindictiveness is that the additional charge was brought at a point in time after his exercise of a protected legal right [*viz.*, to be tried by a jury]." *Goodwin, supra,* at 382, fn. 15. In accordance with *Goodwin*, the myriad of motives present in the pretrial setting which underlie the prosecutor's decision to reindict negate invocation of the presumption. Absent such presumption the burden lies with the defendant to "prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Goodwin, supra,* at 384. In his appellate brief defendant offers no proof of actual vindictiveness; in fact, defendant chose not to address this issue on appeal. In addition, a review of the record reveals there is no evidence demonstrating actual vindictiveness by the prosecutor in procuring the subsequent indictment with the added specification. The prosecutor stated his motivation for reindicting defendant was solely the result of "a search for the truth, not any type of penalty to this defendant."

The prosecutor's decision to reindict defendant with the added specification constituted a proper exercise of prosecutorial discretion in the pretrial setting of the case. Defendant was afforded his right of due process.

Defendant's second assignment of error follows:

"In the trial court's instruction to the jury it was plain error to acknowledge that the state had presented evidence of flight and that if defendant did not satisfactorily explain it that said conduct could be considered in determining his guilt for robbery."

This assignment of error is without merit.

R.C. 2911.02, robbery, the offense of which defendant was convicted, states in pertinent part as follows:

"(A) No person, [1] in attempting or committing a theft offense * * * or [2] in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."

The court charged the jury as follows:

"In this case, there is evidence tending to indicate that the defendant fled or attempted to flee from the vicinity of the alleged crime. In this connection, you are instructed that flight in and of itself does not raise a presumption of guilt, but unless satisfactorily explained, it tends to show consciousness of guilt or a guilty connection with the crime.

"If, therefore, you find that the defendant did flee or attempted to flee from the scene of the alleged crime and he has not satisfactorily explained his conduct in doing so, you may consider this circumstance in the case in determining the guilt or innocence of the defendant."

Defendant contends the foregoing instruction was in error since it allowed the jury to conclude defendant was guilty of robbery if it found he fled or attempted to flee the scene of the crime.

Defense counsel did not object to the court's charge. In fact, counsel stated he was "satisfied" with the charge.

Ordinarily a reviewing court will

consider only such errors as were properly and timely preserved and will not, as here, pass upon errors waived in the trial court. Crim. R. 30; *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804; *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364.

An exception to this rule is found in Crim. R. 52(B), which provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court interpreted this rule as one to be invoked only in the most exceptional of circumstances. As the court stated in *Long, supra,* at paragraph three of the syllabus: "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."

The court also formulated the following definition of "plain error": "A jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim. R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *Long, supra,* at paragraph two of the syllabus.

Error, if any, in the relevant portion of the charge does not constitute plain error. Contrary to defendant's claim, the charge did not allow the jury to find defendant guilty of robbery if it found he fled or attempted to flee the scene of the crime. In this regard, the court expressly instructed the jury "that flight in and of itself does not raise a presumption of guilt."

*Judgment affirmed.*

MATIA, P.J., and BASINGER, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, and RANDALL L. BASINGER, J., of the Court of Common Pleas of Putnam County, sitting by assignment.