DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Sandusky County Court of Common Pleas. There, following a jury trial, appellant was convicted and sentenced for compelling prostitution of a minor, disseminating matter harmful to juveniles, two counts of corruption of a minor and sexual imposition. He was sentenced to a total of nine years imprisonment. After a postconviction hearing, appellant was additionally adjudicated a sexual predator. Because we conclude that appellant was properly convicted and sentenced, we affirm.
In 1997, appellant, Robert H. Lehman, maintained an East State Street apartment in Fremont, Ohio. By all accounts, appellant's apartment was frequently visited by several neighborhood teenage boys.
E.B., a boy who was thirteen in November 1997, testified that he was a visitor at appellant's apartment. E.B.'s first visit was uneventful. However, during a second visit, E.B. testified that appellant showed him a pornographic videotape and paid him $40 so that appellant could masturbate him to ejaculation.
A second thirteen-year-old, R.T., later testified that he too had been shown pornographic videotapes by appellant. R.T. engaged in a continuing course of sexual conduct with appellant, beginning in the summer of 1996 when R.T. was twelve years old. R.T. also reported that appellant regularly paid him for sex.
Appellant was eventually charged in two separate indictments. The indictments contained seven counts of compelling prostitution, six counts of corruption of a minor, and one count each of disseminating materials harmful to juveniles, importuning and sexual imposition. Appellant pled not guilty and the matter proceeded to a trial before a jury. After deliberation, the jury convicted appellant of two counts of corrupting a minor and single counts of compelling prostitution, disseminating matter, and sexual imposition. Appellant was acquitted of the remaining charges.
Following an R.C. 2950 hearing, appellant was adjudicated a sexual predator. The court then sentenced appellant to consecutive terms of five years for compelling prostitution, one year for disseminating material, and eighteen months each on the corrupting of a minor counts. The court imposed a six-month sentence for sexual imposition, concurrent with the felony time.
Appellant now appeals this conviction and sentence, setting forth the following ten assignments of error:
"Assignment of Error Number One
 The Court of Common Pleas committed reversible error when it allowed the Prosecutor to present evidence to the Jury about sexual activity between the defendant- appellant and R. T. when [he] was less than 13 years of age.
"Assignment of Error Number Two
 Prosecutorial misconduct during the trial materially affected substantial rights of the defendant, and the trial court committed reversible error when it failed to remedy those instances of misconduct by denying the motion to acquit and motion for new trial and motion for mistrial filed after the verdicts were returned.
"Assignment of Error Number Three
 The Court of Common Pleas committed reversible error when it permitted the State to cross-examine a defense witness about the defendant's prior criminal record.
"Assignment of Error Number Four
 The jury verdicts of guilty to Compelling Prostitution and Dissemination of Matter Harmful to Juveniles and Corruption of a Minor and the Trial Court verdict of guilty to Sexual Imposition are not sustained by sufficient evidence and are contrary to law and the trial court committed reversible error when it failed to grant the defense motion for acquittal, new trial, and mistrial.
"Assignment of Error Number Five
 The imposition of the maximum sentences on the defendant on each count are not sustained by sufficient evidence and it was an error of law for the trial court to impose such sentences in this case, as well as an abuse of discretion.
"Assignment of Error Number Six
 The cumulative effect of all the errors made by the trial court, together with the prosecutorial misconduct and inconsistency in witness statements by R. T. and E. B. constitute such plain error, under Criminal Rule 52 (B), as to justify reversal of the defendant's conviction on all counts in this matter.
"Assignment of Error Number Seven
 The trial court's decision to classify the defendant as a sexual predator, pursuant to R.C. 2950.09 is contrary to law and not sustained by sufficient evidence because the Court accepted the expert opinion of Dr. Saul Fulero that the defendant's risk of re-offending is moderate, and said decision is plain error pursuant to Rule 52 (B).
"Assignment of Error Number Eight
 Ohio Revised Code Section 2950 is unconstitutional because Section 1, Article I of the Ohio Constitution is a guarantee of basic rights under the Ohio Constitution and natural law, independent of federal constitutional jurisprudence, and classification of Robert Lehman as a sexual predator violates his inalienable rights as guaranteed by Section 1, Article I, of the Ohio Constitution because the statute is unreasonable, arbitrary, and bears no real relation to the public health, safety, morals or general welfare.
"Assignment of Error Number Nine
 "The `worst form of the offense' provisions of R.C. 2929.14 and R.C. 2929.12, as applied to defendant-appellant, are unconstitutionally vague and overbroad and violate the rule of lenity, therefore, as the defendant was found to be only a moderate risk to re-offend, the sentence imposed should be modified to the shortest term prescribed by law as mandated by R.C. 2929.14.
"Assignment of Error Number Ten
 In light of the extensive errors of law, prosecutorial misconduct, jury misdirection, and prosecution witness perjury, it was error for the trial court to refuse to allow the defendant to have an appeal bond set for him while awaiting the outcome of his appeal."
 I.
The focus of appellant's first assignment of error is trial testimony by R.T. that his sexual relationship with appellant began in 1996, rather than 1997. Because this made R.T. twelve years old when his sexual encounter with appellant occurred, appellant could have been charged with rape rather than corruption of a minor with respect to this activity. Appellant argues: 1) springing this testimony on him the day of the trial was unfair surprise, 2) the prosecutor's failure to charge these incidents as rape was a calculated plan to avoid the requirements of the rape shield laws, and 3) the testimony was an unwarranted introduction of "other acts" evidence which operated to appellant's prejudice.
Appellant claims he learned of this change in testimony just prior to the start of the trial. At that point, he made a motion for a continuance, apparently for the purpose of finding witnesses to dispute the testimony. The trial court denied the motion, but allowed appellant leave to renew the motion at the close of the state's case. Appellant did not, however, renew the motion at that time.
Rulings on the admission of evidence and the overall conduct of a trial are within the discretion of the court and will not be overturned absent an abuse of that discretion. Rocky River v. Saleh (2000),139 Ohio App.3d 313, 324; State v. Long (1978), 53 Ohio St.2d 91, 98. An abuse of discretion is more than an error of law or of judgment, the term implies that the court's attitude is unreasonable, arbitrary or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 168-169. Here, the trial court's initial reluctance to stop a trial once a jury was empaneled hardly rises to an abuse of discretion.
With respect to the state's charging decision, prosecutors are imbued with discretion in charging decisions. Absent some indication that a charging decision was the result of vindictiveness, reviewing courts will not interfere with that decision. See State v. Wilson (1988),47 Ohio App.3d 136; State v. Tamburin (Sept. 12, 2001), Medina App. No. 3162-M, unreported at 6. In this matter, appellant alleges that the state's charging decision was influenced not by vindictiveness, but for tactical purposes. Such an exercise of prosecutorial discretion is not prohibited. See Id at 6-7.
As to the trial court's decision to admit R.T.'s testimony over appellant's objection, we find nothing to indicate that this decision represented an attitude of unreasonableness sufficient to constitute an abuse of discretion. Accordingly, appellant's first assignment of error is not well-taken.
 II.
In his second assignment of error, appellant complains that the state's cross-examination of defense witnesses constituted prosecutorial misconduct. Such behavior by the state should have resulted in the court ruling favorably on appellant's motions for a new trial or a mistrial. Specifically, appellant asserts that the prosecutor made reference to matters not in evidence when he asked defense witnesses if they had ever seen appellant have sex with specific people. Appellant contends these inquiries were calculated solely to cause appellant "discomfort and humiliation."
The scope of cross-examination rests within the sound discretion of the court. State v. Evans (Jan. 27, 2001), Montgomery App. No. 18512, unreported at 5, citing State v. Ferguson (1983), 5 Ohio St.3d 160,165-166. On cross-examination, the examiner is permitted to ask questions as long as he or she has a good faith belief that a factual basis for the question exists. State v. Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus. Indeed, it is grounds for a mistrial when a lawyer rests his case, failing to adduce evidence of harmful information which he or she has, in the presence of the jury, asserted to be true in a question. State v. Daugherty (1987), 41 Ohio App.3d 91, 93.
In the context of this trial, we conclude the prosecutor did have a good faith basis for the questions of which appellant complains. E.B. testified that at least part of his sexual encounter with appellant was in the presence of a third party. E.B. also testified that at some point R.T. came to appellant's apartment at which time appellant pulled down R.T.'s pants showing R.T.'s penis to E.B. R.T.'s testimony supported this account.
However, the witness that E.B. and R.T. testified was present during these events was called by the defense. That witness contradicted E.B. and R.T.'s account, maintaining he saw no such sexual activity. On cross-examination, the state asked the witness whether he had ever seen appellant have sex with the witness's brother, who had once lived with appellant. An objection to this question was sustained. The state then asked the witness if he had ever seen appellant have sex with R.T. or "any of your other friends." An objection was made to this question, but was overruled. Other defense witnesses were asked if they had ever had sex in appellant's apartment or seen appellant have sex with any other person.
Appellant characterizes these questions as unwarranted, but clearly in the case of the witness placed at the scene by E.B. and R.T., there was a direct conflict in testimony which the state had a right to explore. Moreover, the remaining defense witnesses attempted to assail the credibility of E.B. and R.T. Many did so by saying that they were frequently present and observed no unusual activity in appellant's apartment. The questions asked by the state of these witnesses were less than subtle attempts to demonstrate that sex is not generally an activity performed with an audience. This seems a valid inquiry in light of direct testimony asserting that the acts of which appellant was accused could not have happened outside the view of these witnesses.
Accordingly, appellant's second assignment of error is not well-taken.
 III.
During trial, the defense called the mother of two of the young men who frequented appellant's apartment during the relevant period. During her direct testimony, the following exchange occurred.
"Q. And did [appellant] ever tell you he was gay?
 "A. My son told me and I did have a discussion with [appellant] about it. I'm very open with my children. We talk about everything, including their sexual preference.
 "And I satisfied to my satisfaction as a mother, and I think I'm a very good mother, that Bob was not a threat to my children.
"MR. FIEGL: Objection, Your Honor.
"THE COURT: That was her statement.
"MR. FIEGL: Okay.
"THE COURT: Overruled."
At a side bar following this testimony, the state indicated that this testimony opened the door for questions concerning the witness's basis for this belief: specifically, whether she was aware of appellant's prior conviction on four counts of corruption of a minor for having sex with young boys. The court delayed consideration of this to permit appellant to assert a motion in limine in chambers after appellant had completed his direct.
In chambers, after considering arguments on the motion, the court ruled that the testimony had constituted a voucher for appellant and placed his character at issue. On this ground, the court permitted the state to inquire about the witness's knowledge of appellant's prior convictions and imprisonment. Appellant contends this ruling constituted an abuse of discretion.
 "A character witness may be cross-examined as to the existence of reports of particular acts, vices, or associations of the person concerning whom he has testified which are inconsistent with the reputation attributed to him by the witness — not to establish the truth of the facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given his testimony. Such inconsistent testimony tends to show either that the witness is unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound." State v. Elliott (1971), 25 Ohio St.2d 249, paragraph two of the syllabus, vacated on other grounds Elliott v. Ohio (1972), 408 U.S. 939.
The testimony at issue clearly went beyond the scope of the defense counsel's question. Nevertheless, the result was an opinion statement by the witness touting appellant's good character. As a result, the witness became a character witness for appellant and, pursuant to the Elliott
syllabus rule, may be quizzed about matters which are inconsistent with the characteristics she attributed to him. Certainly a prior conviction arising out of sexual relations with children would be inconsistent with the witness's assertion, that "Bob was not a threat to my children." Consequently, the trial court was within its discretion in permitting this line of inquiry. Accordingly, appellant's third assignment of error is not well-taken.
 IV.
Appellant, in his fourth assignment of error, challenges the weight and sufficiency of the evidence.
In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J. concurring); State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v.Eley (1978), 56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
We have carefully reviewed the record in this matter and conclude that there was evidence presented which, if believed, would establish beyond a reasonable doubt the elements of the crimes of which appellant was convicted. Moreover, we find no indication that the jury lost its way or that any manifest miscarriage of justice was perpetrated.
Accordingly, appellant's fourth assignment of error is not well-taken.
 V.
In his sixth assignment of error, appellant complains that the cumulative error discussed above and the purported inconsistency of the prosecution witnesses' testimony constitutes plain error, warranting reversal on all counts. For the reasons stated in our consideration of assignments of error one through four, this assignment of error is not well-taken.
 VI.
Appellant's Assignments of Error Nos. Five, Seven, Eight and Nine concern sentencing. In his fifth assignment of error, appellant complains that the trial court erred in imposing maximum, consecutive sentences for the offenses.
R.C. 2929.14(C) provides that a court may impose the longest available term of imprisonment if it finds that the offender 1) committed the worst form of the offense, 2) poses the greatest likelihood of committing future crimes, or 3) such a sentence is required by law. R.C.2929.14(E)(3) permits the imposition of consecutive sentences only when the court concludes that such a sentence is necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses, and 1) the crimes were committed while awaiting trial or on postconviction release, 2) the crime resulted in harm so great or unusual that a single term does not adequately reflect the seriousness of the conduct, or 3) the offender's criminal history shows that consecutive terms are needed to protect the public. R.C.2929.19(B)(2)(c), (d) and (e) require the sentencing judge to provide oral or written reasons for imposing either maximum or consecutive sentences. See, also, State v. Edmonson (1999), 86 Ohio St.3d 324,328-329.
At the sentencing hearing, the court explained its decision to impose maximum consecutive sentences:
 "THE COURT: The Court, in issuing it's [sic] sentence in this case, will be considering the age of the victims and the psychological harm that resulted to them, the relationship between the victims and the Defendant, the Defendant's prior criminal history, and the violation of rule of parole, * * *
 "In issuing its sentence in this case, the Court finds that the Defendant is not a fit subject for community control and, in fact, finds that the maximum sentence should be imposed in each case. The finding of maximum sentence is made because, in the Court's opinion, and this being a second time around, the Defendant committed the worst form of the offense with these boys and that he poses the greatest likelihood of committing future offenses. * * *
 "The Court further finds that, in these cases, the harm is so great that a single term will not adequately reflect the seriousness of the Defendant's conduct and that his criminal history shows that consecutive terms are needed to protect the public as well as to punish the offender.
 "Therefore, it is ordered that all of the sentences shall be served consecutively to each other except for the six month misdemeanor sentence which will be served concurrently under the provisions of law."
In this statement, the court made the requisite findings set by R.C.2929.14 to impose consecutive maximum sentences. Moreover, although sparse, the court has explained its reasoning sufficiently to satisfy R.C. 2929.19(B)(2). Accordingly, appellant's fifth assignment of error is not well-taken.
In his seventh assignment of error, appellant complains that the trial court erroneously declared him a sexual predator because the court accepted the opinion of a defense psychologist that appellant posed only a "moderate" risk of reoffending.
R.C. 2950.09(B)(3) directs the court to consider numerous factors in determining whether there is sufficient evidence to designate an individual a "sexual predator." The statute directs:
 "(3) In making a determination * * * as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
"(a) The offender's or delinquent child's age;
 "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 "(g) Any mental illness or mental disability of the offender or delinquent child;
 "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
Notwithstanding the defense psychologist's testimony, appellant has been convicted of sexually preying on six different teenage boys over a period of years. While the psychologist's lukewarm endorsement of appellant's likelihood of again offending speaks to one of the statutory considerations, the facts of this offense and the others for which appellant served time maintain high negative consideration with respect to at least five of the considerations. Consequently, we cannot say that the trial court erred in determining that appellant is a sexual predator. Accordingly, appellant's seventh assignment of error is not well-taken.
In his eighth assignment of error, appellant challenges the constitutionality of the sexual predator law. This assignment of error is not well-taken. State v. Williams (2000), 88 Ohio St.3d 513, 521, etseq.
In his ninth assignment of error, appellant contends that the use of the phrase "worst form of the offense" in R.C. 2929.14 and 2929.12 is unconstitutionally vague. We have already considered and rejected this argument in State v. Shupe (Oct. 27, 2001), Huron App. No. H-00-010, unreported, following State v. Mushrush (1999), 135 Ohio App.3d 99,109-110, motion to certify overruled (1999), 87 Ohio St.3d 1406. Accordingly, appellant's ninth assignment of error is not well-taken.
 VII.
In his remaining assignment of error, appellant complains that the trial court abused its discretion when it denied him release on bond, pending appeal. Given our total affirmance of appellant's conviction and sentence, this assignment of error is moot.
On consideration whereof, the judgment of the Sandusky County Court of Common Pleas is affirmed. Costs to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.