**The CITY OF TOLEDO, Appellee,**

v.

**THOMPSON–BEAN, Appellant.**

[Cite as *Toledo v. Thompson–Bean,* 173 Ohio App.3d 566, 2007-Ohio-4898.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–06–1072.

Decided Sept. 21, 2007.

David Toska, Chief Prosecutor, and Kathryn J. Sandretto, Assistant Prosecutor, for appellee.

Douglas A. Wilkins, for appellant.

SINGER, Judge.

{¶ 1} On April 28, 2005, the city of Toledo filed a complaint in the Toledo Municipal Court against appellant, Lisa Thompson–Bean, for violating the Safe School Ordinance, Toledo Municipal Code 537.16. According to the complaint, appellant "became very outraged during a scheduled meeting" with the principal of Stewart School, William Keaton. The complaint further alleged that "Ms. Bean stated to said principal William Keaton 'I don't give a fuck about this building, I'm coming back, ya'll haven't heard the last from me yet' " and that appellant "continued to yell obscenities in front of students and office personnel and her behavior was threatening as well."

{¶ 2} Appellant entered a plea of not guilty and the matter proceeded to a bench trial. William Keaton, principal of Stewart School, an all-girls public

school, testified that appellant requested a meeting with him, assistant superintendent Bob Clark, and two teachers in order to address her dissatisfaction with administrative and grading decisions for her two daughters, both students at the school. Joyce Brown, a school security officer, and Julie Rodecker, a school secretary, also testified for the city.

{¶ 3} The meeting was held in an empty classroom on a floor that contained first and second grade classes. Keaton testified that the meeting "was terminated because of Ms. Bean's behavior during the meeting. It, it became—it was, got out of control with her actions, her behavior and her profanity. She got up in the meeting and cursed, said she didn't give a fuck about this place, slammed the door during school. I had to adjourn the meeting for the safety of the kids and watch out for the well being of the building and our little girls."

{¶ 4} After appellant exited the meeting, having slammed the door, she then, according to Keaton, "walked down the hall using profanity." Keaton followed appellant down the hallway, closing doors to other classrooms, because "teachers were coming to [their] doors. They didn't know what was going to happen or what was going on. You could see fear on first and second graders' faces." Keaton radioed Browne, the security officer, notified her that appellant was coming her way, and asked her to call the police because "I didn't know her [appellant's] next move."

{¶ 5} Browne testified that appellant approached her as she walked down the hallway "yelling and screaming": "I want to get my kids the fuck out of this school." Browne told appellant to stop using "profanity" in the school. She followed appellant into the school office, where several children were sitting; Browne then heard appellant say, in the office, "I'm tired of kids picking on mine in school. I'm getting them the [fuck] out of here."

{¶ 6} Rodecker, the school secretary, testified that she heard appellant coming down the hallway, "very loud and obscene," but she could not recall what exact words appellant used. She said that once the police were called, appellant left the building.

{¶ 7} Appellant's version of events differs: She testified that Bob Clark scheduled the meeting because she "needed Jesus in her life." She admitted that she had become extremely upset because, in the meeting, a teacher refused to talk to her; appellant told the attendees that she was leaving and would come back with a lawyer. Someone in the meeting then said, according to appellant, "if you're so unhappy with where your children are attending school, why don't you remove them." Appellant left the meeting, and, as she walked down the hallway, encountered Brown and one "Miss Regan." She told Browne and Regan that she was transferring her children to another school; then, she "walked over to the office to look for the secretary where I can get two out of district transfers, which

Bob Clark told me to go get and put in." Appellant denied screaming or yelling "fuck" or any other curse words, although she did admit to being "loud" and walking loudly in the hallway.

{¶ 8} The trial court found appellant guilty of violating the Safe School Ordinance and imposed a sentence of 30 days' incarceration, suspended, a fine of $100, also suspended, and costs. Appellant appealed and now raises three assignments of error:

{¶ 9} "1. Appellant's profanity did not rise to the level of 'fighting words' and thus was protected speech guaranteed under the First and Fourteenth Amendments to the U.S. Constitution and analogous provisions of the Ohio Constitution; the ordinance is unduly vague and overbroad in violation of the Equal Protection Clause of the Fourteenth Amendment and analogous provisions of the Ohio Constitution.

{¶ 10} "2. The trial court erred when it denied Bean's motion for a continuance in order to subpoena an eyewitness who would testify for the defense; such a ruling was violative of Bean's right to compulsory process as guaranteed to her by the Sixth and Fourteenth Amendments to the U.S. Constitution and analogous provisions of the Ohio Constitution.

{¶ 11} "3. There is insufficient evidence in the record to convict Bean for having violated the safe school ordinance; the conviction is against the manifest weight of the evidence."

{¶ 12} Toledo Municipal Code 537.16 provides: "Assault upon a teacher; disrupting school activity.

{¶ 13} "(a) No person shall * * * disrupt, disturb or interfere with the teaching of any class of students, or disrupt, disturb or interfere with any activity conducted in a school * * *.

{¶ 14} "(b) Whoever violates this section is guilty of a misdemeanor of the first degree."

{¶ 15} Appellant argues that the Safe School Ordinance is vague on its face by analogizing to cases involving disorderly conduct, noting that a person cannot be convicted of disorderly conduct based simply on spoken words. She also argues that since the ordinance does not define "disrupt, disturb or interfere," it does not give notice of what conduct is illegal. In response, the city argues that school grounds are unique areas, allowing greater regulation of behavior, and that a person of common intelligence "should realize" that conduct like appellant's would "disturb and disrupt" elementary school activities.

{¶ 16} The void-for-vagueness doctrine is founded in the Due Process Clause of the Constitution. *Buckley v. Wilkins*, 105 Ohio St.3d 350, 2005-Ohio-

2166, 826 N.E.2d 811, ¶ 17. "Laws must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' and laws must also 'provide explicit standards' for the police officers, judges, and jurors who enforce and apply them." Id., quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222. A municipality has an obligation "to frame its criminal statutes so that those to whom they are addressed may know what standard of conduct is intended to be required." *Cline v. Frink Dairy Co.* (1927), 274 U.S. 445, 458, 47 S.Ct. 681, 71 L.Ed. 1146. An ordinance that "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Constr. Co.* (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322. It must inform persons what conduct on their part will render them criminally liable. *Columbus v. Thompson* (1971), 25 Ohio St.2d 26, 30, 54 O.O.2d 162, 266 N.E.2d 571. A criminal law is also vague and violative of due process if it fails to "contain ascertainable standards of guilt." *State v. McDonald* (1987), 31 Ohio St.3d 47, 31 O.B.R. 155, 509 N.E.2d 57, citing *Winters v. New York* (1948), 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840. " 'The dividing line between what is lawful and unlawful cannot be left to conjecture.' " *Columbus v. Thompson*, 25 Ohio St.2d at 30, 54 O.O.2d 162, 266 N.E.2d 571, quoting *Connally*, supra.

{¶ 17} In *Euclid v. Moore* (Dec. 9, 1999), 8th Dist. No. 75143, 1999 WL 1129580, a mother had repeatedly walked her tardy son into his first-grade classroom instead of reporting to the office and obtaining a visitor's pass. The mother was told several times to abide by the school policy of signing in at the office during school hours; notices ordering visitors to report to the office were posted on entry doors; a Euclid police officer had previously responded to reports of the mother disturbing class and had given her a verbal warning. The first-grade teacher testified that the interruptions were disruptive, although she kept teaching and did not ask the mother to leave. The mother was charged and convicted of violating Euclid Ordinance 537.24(a), a statute nearly identical in wording to Toledo Municipal Code 537.16. The Euclid statute reads as follows:

{¶ 18} "No person shall assault, strike, threaten or menace a teacher, instructor, professor, person in charge of a class of students or any employee of any school, college or university while in the performance of their duties, and no person shall disrupt, disturb or interfere with the teaching of any class of students, and no person shall disrupt, disturb or interfere with any activity conducted in a school, college or university building, or upon the campus or grounds thereof, or in any public place * * *."

{¶ 19} In finding the ordinance unconstitutionally vague, the Eighth District Court of Appeals took a different tack. Following *Grayned v. Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222, and *State v. Schwing* (1975), 42 Ohio St.2d 295, 71 O.O.2d 288, 328 N.E.2d 379, the court found it could avoid striking down the ordinance by construing it to require a showing of both "willful conduct" and "conduct which either causes the class to terminate in an untimely manner or substantially impairs the conduct of the classroom." Applying these requirements to the facts, it concluded that the city had presented insufficient evidence that the mother's acts were willful and that she caused a substantial impairment in the conduct of the classroom.

{¶ 20} In *Grayned*, a similar municipal ordinance prohibiting disrupting school activity was found constitutional because, although (as appellant argues) the "quantum of disturbance" was not specified, it required that "(1) the 'noise or diversion' be actually incompatible with normal school activity; (2) there be a demonstrated causality between the disruption that occurs and the 'noise or diversion'; and (3) the acts be 'willfully' done." *Grayned*, 408 U.S. at 113, 92 S.Ct. 2294, 33 L.Ed.2d 222. These requirements saved the ordinance from vagueness.

{¶ 21} Likewise, in *Schwing*, the Ohio Supreme Court found former R.C. 3761.11, which prohibited disturbing a lawful meeting, unconstitutionally vague. That statute was repealed and replaced with R.C. 2917.12, which now prohibits acts done "with purpose to prevent or disrupt a lawful meeting, procession, or gathering * * *." Following *Schwing*, R.C. 2917.12 has been construed to require a showing that the disruption was "substantial," meaning "major, consequential, effective or significant," "of considerable quantity or dimension, or of solid effect." *State v. Brand* (1981), 2 Ohio App.3d 460, 2 OBR 556, 442 N.E.2d 805, paragraph two of the syllabus. Only conduct that "effectively impairs, interferes with or obstructs the due conduct of the meeting in a major, consequential, significant or considerable manner" is prohibited. Id.

■ {¶ 22} *Euclid v. Moore*, supra, correctly applied the requirements of *Grayned* and *Schwing* because, if at all possible, a court must "apply all presumptions and pertinent rules of construction" to uphold the constitutionality of an ordinance. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 446 N.E.2d 449. "A legislative body need not define every word it uses in an enactment." Id., citing *Kiefer v. State* (1922), 106 Ohio St. 285, 139 N.E. 852. Where the word "disturb" is used, it must be construed to exclude subjective sensitivities and to use an objective standard. For example, the term "disturb" in antinoise ordinances requires a showing that the amplification "could be anticipated to offend the reasonable person, i.e., the individual of common sensibilities." Id., following *Chaplinsky v. New Hampshire* (1942), 315 U.S. 568,

573, 62 S.Ct. 766, 86 L.Ed. 1031. Also, the term "disturb" cannot encompass actions or behavior that is merely "annoying," as that term runs the risk of suppressing otherwise protected speech and engendering arbitrary enforcement. *Dorso,* 4 Ohio St.3d at 63, 4 OBR 150, 446 N.E.2d 449, citing *Coates v. Cincinnati* (1971), 402 U.S. 611, 613, 91 S.Ct. 1686, 29 L.Ed.2d 214.

{¶ 23} Applying these rules, the Safe School Ordinance is not vague for its use of the terms "disrupt" and "disturb" as they entail an objective test. *State v. Brand* (1981), 2 Ohio App.3d 460, 2 OBR 556, 442 N.E.2d 805, paragraph two of the syllabus. However, following the reasoning of *Euclid v. Moore,* supra, we are also required to construe the ordinance as proscribing only "willful" disturbances. See also *State v. Cornwell,* 149 Ohio App.3d 212, 2002-Ohio-5178, 776 N.E.2d 572, ¶ 16 ("Statutes that prohibit 'disturbing the peace' are construed, if possible, to apply only to conduct that is actually intended to create a disturbance * * * ").

{¶ 24} Since the Safe School Ordinance must be judicially construed to apply only to willful acts done with intent to disturb, disrupt, or interfere with school activity and that actually cause a substantial disruption, disturbance, or interference with school activity, objectively measured, the ordinance is not unduly vague and is constitutionally definite. *Dorso,* 4 Ohio St.3d at 61, 4 OBR 150, 446 N.E.2d 449, citing *United States v. Harriss* (1954), 347 U.S. 612, 618, 74 S.Ct. 808, 98 L.Ed. 989. Appellant's first assignment of error is therefore not well taken.

{¶ 25} In appellant's second assignment of error, appellant contends that the court erred in denying her a continuance so she could subpoena a defense witness.

{¶ 26} It is well settled that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078.

{¶ 27} The record shows that on the day of trial, appellant asked for a continuance so she could subpoena Regan, a school employee who was present the day appellant went to the school. The trial court denied appellant's request. Following appellant's testimony, her counsel asked that the record reflect that he wanted to subpoena Regan but that the trial court had denied his motion for a continuance so he could do so. The trial court noted that, according to the testimony, Browne was with Regan during the incident and that counsel was able to thoroughly cross-examine her. Nevertheless, the trial court allowed appellant's counsel to proffer her testimony that she was present the day of the incident and that she did not hear appellant utter any obscenities. Taking into

consideration the inconvenience a continuance granted during trial would cause and given the fact that the trial court allowed counsel to proffer Regan's testimony, we do not find that the judge abused her discretion in denying appellant's motion for a continuance. Appellant's second assignment of error is found not well taken.

{¶ 28} Next, we address the third assignment of error. We must determine whether appellant's conviction for violating the ordinance was supported by sufficient evidence of a willful intent to substantially disrupt a school activity.

{¶ 29} When reviewing a sufficiency-of-the-evidence claim, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jones* (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, and *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring).

{¶ 30} In criminal law, the term "willful" is synonymous with "purposeful." "Purpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct." R.C. 2901.22(A), 1973 Legislative Service Commission Notes. Absent an admission, proof of a defendant's purpose or specific intent invariably requires circumstantial evidence. *State v. Mundy* (1994), 99 Ohio App.3d 275, 288, 650 N.E.2d 502. "Circumstantial evidence is the 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *State v. Henry*, Franklin App. No. 04AP–1061, 2005-Ohio-3931, 2005 WL 1806462, at ¶ 33, quoting *State v. Bentz* (1981), 2 Ohio App.3d 352, 355, 2 OBR 408, 442 N.E.2d 90. Circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks*, supra.

{¶ 31} The trier of fact in this case heard evidence that after appellant expressed her displeasure at the closed door meeting, she proceeded down a hallway loudly yelling obscenities. The trier of fact heard evidence that appellant continued to walk through the school yelling obscenities even after a school security officer told her to stop. Witnesses testified that as appellant proceeded down the hallway, teachers were hastily forced to close their classroom doors and comfort some of the fearful children. It was no doubt obvious to appellant as she walked through the school that school was in session and that children were

present. This evidence, if believed, shows that appellant engaged in more than a brief emotional outburst. Rather, this evidence points to a deliberate decision on appellant's part to disturb the school. Accordingly, we find that there was sufficient evidence of a willful intent to substantially disrupt a school activity from which, when viewed in a light most favorable to the state, a rational trier of fact could have found appellant guilty beyond a reasonable doubt of violating the Safe School Ordinance. Appellant's third assignment of error is found not well taken.

{¶ 32} On consideration whereof, the judgment of the Toledo Municipal Court is affirmed.

Judgment affirmed.

PIETRYKOWSKI, P.J., concurs.

SKOW, J., concurs in judgment only.