[Cite as *State v. Toda*, 2019-Ohio-4903.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                             Court of Appeals No. L-18-1149

      Appellee                                             Trial Court No. CR0201801693

v.

Christopher Toda                                    **DECISION AND JUDGMENT**

      Appellant                                           Decided:   November 27, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, J.**

## Introduction

{¶ 1} Following a jury trial, the defendant-appellant, Christopher Toda, was found

to have committed the offense of felonious assault against his girlfriend, whose injuries

included a broken jaw. The Lucas County Court of Common Pleas sentenced Toda to a maximum penalty of eight years in prison. It declined to impose an additional sentence with respect to a repeat violent offender specification.

{¶ 2} On appeal, Toda raises claims of vindictive prosecution, prosecutorial misconduct, and ineffective assistance of trial counsel. He also argues that his conviction is not supported by legally sufficient evidence and is against the manifest weight of the evidence. As set forth below, we affirm the conviction and sentence, *in toto*.

**Facts and Procedural History**

{¶ 3} The following evidence was offered at Toda's trial. Around 10:00 p.m. on January 28, 2018, L.W. picked up her 31 year-old daughter, K.W., from a party and brought her to their home on Donerail Street in Toledo, Ohio. By all accounts, K.W. was highly intoxicated. Once home, K.W. went upstairs to the bedroom she shared with her boyfriend, Christopher Toda. Toda, who was asleep, had lived there "on and off" for about one year.

{¶ 4} K.W. became agitated and began throwing things at Toda, waking him from a "deep sleep." She also burned Toda's bible in the bathroom sink. The two began "arguing very loudly." L.W., whose bedroom was on the main floor, testified that she told them to "knock it off," but the couple "continued to argue." While L.W. was standing at the bottom of the stair case, she heard Toda announce, "I'm going to jail" which prompted L.W. to ask her daughter if Toda had hit her. L.W. then observed K.W. "stagger out of the bedroom holding her face" and Toda come "downstairs and [left] out

2.

the front door." L.W. called 911 to report, "[m]y daughter's boyfriend is beating her up." Admittedly, L.W. did not observe any physical altercation between the two.

{¶ 5} Officer Jim Petro ("J.P.") of the Toledo Police Department arrived at the home within five minutes of being dispatched. The time was about 1:35 a.m., now January 29, 2018. Officer Petro's uniform was equipped with a body camera, and video of his visit to the home was played for the jury. The footage shows L.W. greeting the officer at the front door and leading him to K.W. Upon seeing K.W., the following exchange took place between Officer Petro ("O.P.") and K.W.:

K.W.: [Crying] My teeth are knocked in.

J.P.: * * * Hey, who did this? Is he still here? Or did he leave? Where'd he go?

K.W.: [Crying] I don't know.

J.P.: Okay, We've got medical coming. * * * Where would he go?

K.W.: [Crying] I don't know. He went down [inaudible].

J.P.: What did he hit you with?

K.W.: His fist.

J.P.: His fist, Okay. * * * You're going to press charges, right?

K.W.: [inaudible]

J.P.: Who is this to you?

K.W.: He was my boyfriend?

J.P.: Does he live here. * * * Does he live with you.* * *

3.

K.W.:  He did yeah.

J.P.:  When? How long ago did he live with you?

K.W.:  Until right now.

Later, while Officer Petro took pictures of her face, K.W. identified her boyfriend as the defendant, "Chris Toda."

{¶ 6} K.W. went to the hospital, and the intake report, generated by the attending physician at 2:28 a.m., states, "Patient presents with Reported Domestic Violence. * * * Pt states she was assaulted."  K.W. was diagnosed with a "Big [chunk] of lip missing at midline, Teeth are displaced and angulated. * * * Hematoma on right cheek bone.  * * * Open fracture of maxilla."  K.W. was admitted and released one day later.

{¶ 7} On February 7, 2018, a Lucas County Grand Jury indicted Toda on a single count of felonious assault.  (Lucas County Court of Common Pleas case No. 18-1253). Toda was jailed while he awaited trial.  During that time, Toda and K.W. talked on the telephone, and ten of those "jail-house" phone calls were played for the jury.  In many of the calls, Toda can be heard telling K.W. that he is "sorry."   Mostly, Toda and K.W. discuss various defense strategies, including what K.W. should, and should not, tell the prosecutor.  For example, during the third call, Toda tells K.W., "[a] dude told me the best thing you can do is [to write] three notarized statements:  one to * * * the prosecutor, my lawyer and the judge."  Toda instructs K.W. "to memorize it and say that I had nothing to do it [because] that's my only shot at them dismissing this. * * * Cuz if you're saying 'I didn't have nothing to do with it' * * * they can't * * * do nothing to me."

4.

K.W. proposes telling "them" that "'I was so highly intoxicated * * * I don't have any recollection of what happened. * * * For all I know he had nothing to do with it.'" Toda dismisses K.W.'s idea, telling her, "Whatever you do, don't * * * say 'I was too drunk to remember anything' [because] then they're [going] to be like 'how do you know that I [i.e. Toda] didn't do it, then?'" Instead, Toda suggests that K.W. tell police that that she was "mad at" [Toda] that night and that she "went out and got into it" with "some random guy" and then came home "like that," but she gave Toda's name "to the cops * * * cuz you were mad." K.W. reminds Toda that she cannot say that she came home "like that" because the police were in her room and saw "blood leaking all over" and "a hole in the wall." K.W. returns to the idea of telling the police that "I was so freaking [inaudible] [that] I don't know even know what happened and that's why I don't think he had anything to do with this." Toda, who did not realize that the "cops were in [her] room," sighs and says, "babe, it's still not gonna look good."

{¶ 8} In subsequent calls, Toda instructs K.W. to tell the prosecutor "with authority" that she is "not pressing charges" and that he's "not guilty of this crime." Toda also suggests that K.W. tell the prosecutor that Toda acted "in self-defense" after K.W. came after him with a knife. K.W. responds, "[a] knife? No." Toda also suggests that she tell the prosecutor that this is a case of "mistaken identity." During the ninth phone call, K.W. says, "I almost wish you would have killed me" and "you definitely fucked me [up]." To that, Toda replies, "No. Why would you ever say that on this phone?"

5.

{¶ 9} The state re-indicted Toda on April 18, 2018, in case No. 18-1693. The second indictment included the same felonious assault charge but added a repeat violent offender ("RVO") specification, pursuant to R.C. 2941.149. The RVO specification was based upon Toda's prior conviction, in 2011, for felonious assault. The newly-indicted case proceeded to trial, and the original case was dismissed.

{¶ 10} Prior to trial, K.W. prepared a notarized letter, indicating that she was intoxicated on the evening she was injured, that she "provoke[ed]" and "antagoniz[ed]" Toda, that Toda "would never cause harm to [her]" and that her injuries were caused by a "fall into a table in [her] bedroom." According to a pretrial motion filed by the state, K.W. told prosecutors that she would not answer questions at trial regarding the cause of her injuries, and that she would testify that she "falls a lot." Based upon those assertions, the state requested that it be allowed to cross-examine K.W. at trial, pursuant to Evid.R. 614(A) ("The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."). The court granted the motion.

{¶ 11} As expected, K.W. testified at trial that she did not recall Toda hitting her on the night in question and she did not recall telling the police otherwise.

{¶ 12} At the conclusion of the two-day trial, the jury found Toda guilty of felonious assault, in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree. Following a pre-sentence investigation and a sentencing hearing, the trial court

6.

ordered Toda to "serve a mandatory term of eight years in prison." It declined to "impose a prison sanction as it relates to the Repeat Violent Offender [specification]."

{¶ 13} Toda appealed the trial court's June 28, 2018 judgment entry. Through counsel, he raises five assignments of error for our review.

A. Appellant's rights to due process as guaranteed by the due process clauses of the constitution of the United States and of the State of Ohio were violated where the state reindicted appellant to add are repeat violent offender specification, pursuant to R.C. 2929.14(D)(2), in response to appellant's refusal to enter into a plea and exercise his right to trial by jury.

B. Plain error was committed denying appellant a fair trial where the state committed prosecutorial misconduct in asserting that blood was found on defendant's clothing, without evidence. (TT at 137).

C. Appellant was denied the effective assistance of counsel where counsel failed to move for dismissal of the instant superceding indictment, and failed to object to the state's suggestion, without evidence, that blood splatter was found on appellant's clothing.

D. The trial court erred in denying the Crim.R. 29 motion to dismiss. (TT2 at 29).

E. The jury's verdict was against the manifest weight of the evidence.

7.

**The superceding indictment did not deprive Toda of a fair trial.**

{¶ 14} In his first assignment of error, Toda claims that the state pursued an RVO specification, via a new indictment, as "punishment" for refusing to accept a plea in the original case and instead exercising his right to a jury trial.

{¶ 15} Toda has forfeited all but plain error because he did not raise the issue of prosecutorial vindictiveness in the trial court. *State v. Pirman,* 94 Ohio App.3d 203, 208, 640 N.E.2d 575 (11th Dist.1994). Plain error is an obvious defect in the trial proceeding that affects substantial rights. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The alleged error must have substantially affected the outcome of the trial, such that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) paragraph two of the syllabus. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.*

{¶ 16} When the state increases the severity of the charges against a defendant after a trial has begun, there is a presumption that the state acted with animus toward the defendant. Conversely, no such presumption arises when the state acts in a similar fashion during the pretrial phase. Instead, the burden is on the defendant to show that the state's decision was motivated by vindictiveness. *State v. Wilson*, 47 Ohio App.3d 136, 137-140, 547 N.E.2d 1185, syllabus (1988), citing *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("Where a second, harsher indictment is issued subsequent to the defendant's invocation of his right to be tried by a jury, it will

8.

not be presumed that prosecutorial vindictiveness was the motive for the reindictment. In such a case, the burden lies with the defendant to prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for exercising a legal right."). The court in *Goodwin* explained the rationale for the distinction.

> In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this state of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins-and certainly by the time a conviction has been obtained-it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision. *Goodwin* at 381.

{¶ 17} First, Toda concedes that there were grounds for the RVO specification, and we would add that charging him with that specification could only be accomplished at that point through another indictment. *See* R.C. 2941.149(A) ("The determination by a court that an offender is a repeat violent offender is precluded unless the indictment * * * specifies that the offender is a repeat violent offender.").

{¶ 18} To support his claim, then, Toda speculates that the state was "well aware" of his prior conviction when the state filed the first indictment, suggesting that it considered, and rejected, including the RVO specification at that time. However, Toda offers no proof that this is true. And, even if it was, the state's decision to add the RVO specification would not, without more, be viewed with suspicion. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him [or her] to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Goodwin* at 382. Therefore, we will not presume an improper motive, absent any evidence to support such an inference.

{¶ 19} Toda points to no such evidence. His claim is based entirely on the timing of the second indictment, i.e. that it was filed "[a]fter plea negotiations broke down" in the first case. As noted by the state, however, the record contains no evidence of any plea negotiations between the parties, let alone that a plea deal was ever offered to him. Absent a transcript or suitable substitute, a reviewing court must presume the validity of the trial court's proceedings. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2nd 384 (1980), citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). In the absence of any evidence to support Toda's claim that he "refused to resolve the initial case," much less that the state pursued a harsher indictment as a means of punishing him for exercising his right to proceed to trial, Toda has failed to establish a case of vindictive prosecution.

{¶ 20} Finally, even if such evidence did exist, we would still find no plain error because, while the trial court did have the discretion to impose an additional sentence as to the RVO specification, it chose not to do so. *See* R.C. 2929.14(B)(2)(a). Therefore, Toda cannot show any prejudicial effect with respect to the refiled indictment. For these reasons, Toda's first assignment of error is not well-taken.

**The trial court did not commit plain error in failing to declare a mistrial.**

{¶ 21} Toda claims that he was denied a fair trial when the prosecutor made reference to Officer Petro observing blood splatter on "the defendant's clothing." The following exchange took place between the state and the officer:

> Q. And so, in addition to taking photographs of the victim's injuries, you also took photographs of blood splatter?
>
> Yes sir.
>
> Q. And not only on the *defendant's clothing* in the hospital but in other locations?
>
> Yes, in the bedroom upstairs. (Trial Tr. at 137; emphasis added.)

{¶ 22} Both sides agree that the record contains no evidence that Officer Petro saw or had any contact with Toda that evening and therefore the officer could not have observed blood on Toda's clothing.

{¶ 23} Toda concedes that his claim of prosecutorial misconduct is limited to plain error review, in the absence of any objection at trial to the exchange cited above. Toda maintains, however, that the prosecutor's question prejudiced the outcome of the trial

11.

because it "suggested that Mr. Toda was in close proximity to KW when she sustained her injuries [which], if true, * * * provide[d] strong circumstantial evidence that KW's injuries were caused * * * by some physical confrontation."

{¶ 24} The state insists that the prosecutor inadvertently asked about blood on "the defendant's clothing," when she intended to refer to "the victim's clothing." It maintains that the jury likely recognized the error because Officer Petro had already acknowledged that he never saw Toda that night. Whether or not that occurred, we find that the prosecutor's statement did not prejudice the outcome of the trial, because, at the time the question was posed, it had already been established - through L.W. - that K.W. and Toda had been "in close proximity" to one another at the time K.W. was injured. More importantly, the jury also heard more damaging, direct evidence of Toda's guilt, including K.W.'s statements that her "teeth [were] knocked in" by her "boyfriend" who hit her with his "fist," that she had been "assaulted" in an act of "[d]omestic [v]iolence," and that Toda had "definitely fucked [her up]." Therefore, we find that the alleged act of prosecutorial misconduct here did not substantially affect the outcome of the case. Toda's second assignment of error is found not well-taken.

**Toda did not receive ineffective assistance of trial counsel**.

{¶ 25} In his third assignment of error, Toda claims that he received ineffective assistance from his trial counsel. To establish his claim, Toda must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for

12.

counsel's errors, the proceeding's result would have been different." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

{¶ 26} A reviewing court must determine whether trial counsel's assistance fell below an objective standard of reasonable advocacy. *Bradley* at 141–142. Moreover, the deficient performance must have been so serious that, "were it not for counsel's errors, the result of the trial would have been different." *Id.* at 141–142.

{¶ 27} Trial strategy "must be accorded deference and cannot be examined through the distorting effect of hindsight." *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 115. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691.

{¶ 28} In support of his ineffective assistance of counsel claim, Toda cites the same facts underlying his first and second assignments of error, i.e. that he was prejudiced by his counsel's failure to challenge (1) the superceding indictment and (2) the prosecutor's reference to blood on the "the defendant's clothing."

{¶ 29} As to the former, Toda maintains that "the superceding indictment * * * raised the risk to Mr. Toda of mandatory incarceration, simply because [he] sought to exercise his right to a trial by jury." We reject the argument. First, because we found no evidence to support a prosecutorial vindictiveness claim, any objection by counsel to the

13.

superceding indictment would properly have been denied by the trial court. "Counsel is not required to file a meritless motion simply for the sake of placing it on the record to avoid a charge of ineffective counsel." *See, e.g., State v. Robinson*, 6th Dist. Lucas No. L-06-1182, 2008-Ohio-3498, ¶ 169. In addition, the trial court was required to impose a mandatory prison term as to the felonious assault conviction under R.C. 2929.13(F)(6), and it declined to impose any additional sentence with respect to the RVO specification. Therefore, Toda cannot show that his sentence was affected by the initiation of the second case.

{¶ 30} Second, Toda claims that trial counsel's failure to object to the prosecutor's reference to blood on "on the defendant's clothing" prejudiced the outcome of the trial because "but for [that reference] there was NO direct evidence * * * that KW [was] injur[ed] due to [the] actions of Mr. Toda." (Emphasis in original). Toda has elevated the prosecutor's misstatement **from** "circumstantial evidence" that "Toda was in close proximity to K.W." (as argued in his second assignment of error) **to** direct evidence of his guilt. Direct evidence is that evidence which, if believed, would prove the existence of a fact without inference or presumption, *Mauzy v. Kelly Serv., Inc.,* 75 Ohio St.3d 578, 583, 664 N.E.2d 1272 (1996), whereas circumstantial evidence is "proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." (Citation omitted.) *Toledo v. Thompson-Bean*, 173 Ohio App.3d 566, 2007-Ohio-4898, 879 N.E.2d 799, ¶ 30 (6th Dist.). At worst, the jury heard circumstantial evidence that Toda was in the vicinity of

14.

K.W. at the time she was injured. That "evidence," however, resulted in no prejudice to Toda because the point had already been made *and* was overshadowed by more damaging, direct evidence of his guilt, i.e. K.W.'s statements to the police, her doctor, and the defendant himself. For those reasons, we find that trial counsel's failure to object to the prosecutor's question did not affect the outcome of his case, and Toda's third assignment of error is found not well-taken.

**The conviction is supported by legally sufficient evidence and is not against the manifest weight of the evidence**.

{¶ 31} Toda's fourth and fifth assignments of error, which we address together, challenge the sufficiency and weight of the evidence, respectively.

{¶ 32} Toda argues that the trial court erred in denying his motion for an acquittal at the conclusion of the state's case-in-chief. A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 33} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in the light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the

15.

crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 34} In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks* at paragraph two of the syllabus; *Yarbrough* at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim). We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks* at 273. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386.

{¶ 35} While sufficiency of the evidence examines whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386. Under the manifest weight of the evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive—the state's or the defendant's? *Id.* at ¶ 25. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387.

{¶ 36} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a

16.

"thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony." *Wilson* at ¶ 25, quoting *Thompkins* at 387. In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *Thompkins* at 387 citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). A conviction should be reversed on manifest weight grounds only in the most "exceptional case in which the evidence weighs heavily against the conviction."' *Thompkins* at 387 quoting *Martin* at 175.

{¶ 37} Turing to the facts of this case, Toda was convicted of felonious assault pursuant to R.C. 2903.11(A)(1), which provides that "no person shall knowingly * * * [c]ause serious physical harm to another." Where the assault causes a bone fracture, the element of serious physical harm is met. *State v. Lee*, 6th Dist. Lucas No. L-06-1384, 2008-Ohio-253, ¶ 30. *See also* R.C. 2901.01(A)(5)(e) (Defining "[s]erious physical harm" as "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.").

{¶ 38} Toda's arguments with respect to the sufficiency and weight of the evidence are the same. That is, he claims that the state introduced "no direct evidence * * * establishing that Mr. Toda caused harm to K.W." In his reply brief, Toda

17.

acknowledges that K.W.'s statements to Officer Petro and her doctor constitute direct evidence of his guilt, but he urges this court to discount them because, at the time K.W. made those statements, she was "severely intoxicated" and "would have been experiencing a partial loss of understanding."

{¶ 39} On review for sufficiency, we do not assess whether the state's evidence was believable but whether, if believed, the evidence against the defendant would support a conviction. Moreover, although there was a discrepancy between K.W.'s statements immediately following her injury and her testimony at trial, "the mere existence of conflicting evidence cannot make the evidence insufficient as a matter of law." *State v. Murphy,* 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Toda committed the crime of felonious assault. We hold that the state met its burden regarding each element of that crime, and accordingly, there was sufficient evidence to support Toda's conviction. Toda's fourth assignment of error is not well-taken.

{¶ 40} With regard to the manifest weight of the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against conviction. The verdict was premised upon multiple sources of evidence, including L.W.'s testimony that she heard her daughter and Toda fighting loudly that night, that she observed Toda run out the front door after hearing him say "I'm going to jail" and seeing K.W. holding her face in pain and Toda's self-incriminating statements made over the phone to K.W.

18.

following his arrest during which he apologized to her, chastised her for implicating him "on this phone," and floated a number of competing defense theories. We conclude that substantial evidence supports the verdict, and that the trial court did not lose its way and create a manifest miscarriage of justice. We find that the verdict is not against the manifest weight of the evidence, and Toda's fifth assignment of error is not well-taken.

{¶ 41} Based on the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Toda is ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.
_____
                                                              JUDGE
Christine E. Mayle, P.J.

Gene A. Zmuda, J.
_____
CONCUR.                                                    JUDGE

_____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.