[Cite as *State v. Lashley*, 2023-Ohio-526.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                       No. 111513

    v.                                     :

REGINA L. LASHLEY,                     :

    Defendant-Appellant.          :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 23, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-654495-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Carla Neuhauser, Assistant Prosecuting
Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Robert B. McCaleb, Assistant Public Defender, *for
appellant.*

SEAN C. GALLAGHER, J.:

**{¶ 1}** Defendant-appellant, Regina L. Lashley, appeals from the judgment of conviction. Upon review, we affirm.

{¶ 2} On December 17, 2020, Lashley was charged under a multicount indictment with two counts of arson in violation of R.C. 2909.03(A)(1), a felony of the fourth degree, and one count of violating a protection order in violation of R.C. 2919.27(A)(2), a felony of the third degree, with a furthermore clause that the violation occurred while committing a felony offense. The charges stemmed from an incident that occurred on or about October 18, 2020, during which two of the victim's vehicles were set on fire outside of her house.

{¶ 3} The case proceeded to a bench trial on May 24, 2021. Testimony and evidence revealed that the victim and Lashley had been friends for many years, but their relationship eventually became acrimonious. Threatening texts were exchanged between them. At the time of the incident, the victim had a protection order against Lashley.[1]

{¶ 4} The victim testified that on October 18, 2020, between 3:00 and 4:00 a.m., she suddenly saw "bright orange" out her window and when she went out to her front porch, she saw Lashley running from the scene. She testified in part as follows:

> I [saw] Regina Lashley running and I said — I said, I see you, Regina Lashley. You are on camera. You're going to jail.
>
> And she jumped over the little fence, she ran through the field, the empty parcels, and she got into the passenger's side of a — it was a blue SUV. It was small. I don't know if it was a Subaru or a Suzuki, but it had a tire on the back. And I knew whose car it was because I had seen them

---

[1] It appears from the record that the victim and Lashley each had a protection order against the other.

earlier at the liquor store around 9:30, and she was with a girl, [T.E.], at the liquor store in that car.

{¶ 5} The victim indicated that the vehicle she observed Lashley enter was parked on a street a few empty parcels away and that Lashley "got into the passenger's side and she rode off." The victim called 911. Her two vehicles in her driveway had been set on fire. The victim acknowledged that she had been the victim of arson twice in 2016, and she assumed the prior fires were associated with a nearby motorcycle club.

{¶ 6} An officer who responded to the victim's home testified that after he arrived, the victim informed him that she believed her ex-girlfriend set the fire. The victim provided a written statement to the police in which she stated, "I ran outside to my front porch where I witnessed Regina Lashley running across my yard."

{¶ 7} A detective in the fire arson unit for the Cleveland Division of Police testified that the origin of fire was external for both of the victim's vehicles, that the heat source was an open flame, and that the fire was intentionally set. The detective testified that there were no trees obscuring the victim's field of view from her house to the street. In the course of his investigation, he listened to the 911 calls made by the victim and an anonymous male caller. Both described an SUV fleeing eastbound with two people. The investigator ran reports that showed no SUVs listed for the two suspects; however, he indicated that neither actually owned any car. The prior arson investigation reports relating to the victim's house had not been made part of

the investigation in this case. The fire investigator testified that he remains unbiased when investigating a fire.

{¶ 8} Following a bench trial, Lashley was found guilty of the offenses as charged. The trial court sentenced Lashley to two years of community control on each count, to be served concurrently, with conditions. Lashley was granted leave to file a delayed appeal.

{¶ 9} Lashley's sole assignment of error claims her convictions were against the manifest weight of the evidence.

{¶ 10} "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Lashley claims that her convictions were based on unreliable eyewitness testimony. She argues that she and the victim had a strained relationship and each had threatened the other, that the victim's recollections from the night of

the fire are suspect, that the victim's demeanor during cross-examination was combative and evasive, and that the follow-up investigation of "who" started the fire was lacking. Lashley also points to other deficiencies in this case.

{¶ 12} Our review of the entire record reflects that credible eyewitness identification testimony from the victim along with other testimony and evidence consistent therewith were enough to withstand the manifest-weight challenge in favor of conviction. The testimony revealed that the victim's two vehicles were set on fire outside of her house. The victim testified that she witnessed Lashley running away from the scene and entering a dark SUV driven by another individual. Her 911 call and her statements to police were consistent. The record also reflects that the victim and Lashley had a relationship that had become acrimonious, the two had exchanged threatening texts to one another, and the victim had a protection order against Lashley at the time of the incident. The responding officer determined the victim had a "clear view" from her house to the street where she saw the SUV. The victim acknowledged that there had been two prior arsons to the victim's home in 2016, and possibly one in 2018, that were assumed to be connected to a motorcycle club. Although the prior incident reports were not included in this investigation, the fire investigator testified that his focus was on the current arson investigation, that he did not receive any information to suggest his investigation should focus on any other individual, and that he remains unbiased when investigating a fire incident. Although neither of the suspects for the subject incident was determined to own an SUV or any vehicle, the victim testified that she saw Lashley with another female

earlier that evening at a liquor store with the same SUV she described leaving the scene of the fire. Further, the 911 calls made by the victim and an anonymous male provided consistent descriptions of an SUV with two persons fleeing eastbound from the scene. The fire investigator determined from his investigation of this arson incident that the fire began on the outside of the vehicles, the heat source of the fire was an open flame, and the fire was intentionally set.

{¶ 13} After considering all the evidence in the case, the trial court found Lashley guilty on all counts as charged. Generally, "credible eyewitness identification testimony is enough to withstand a challenge to the weight of the evidence in favor of a conviction." *State v. Daniels*, 8th Dist. Cuyahoga No. 103663, 2016-Ohio-7299, ¶ 16; *see also State v. Tolliver*, 8th Dist. Cuyahoga No. 108955, 2020-Ohio-3121, ¶ 52 ("[A] conviction is not against the manifest weight of the evidence merely because the victim was the sole eyewitness to the event."); *State v. Humphries*, 8th Dist. Cuyahoga No. 108459, 2020-Ohio-1116, ¶ 11-15 (finding victim's eyewitness testimony was credible despite some inconsistencies). After our review of the record, we do not find that the trier of fact clearly lost its way or that any manifest miscarriage of justice occurred. Lashley's convictions were not against the manifest weight of the evidence, and her sole assignment of error is overruled.

{¶ 14} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

ANITA LASTER MAYS, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR